```
              IN THE UNITED STATES BANKRUPTCY COURT
                FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                          )
                                )     Chapter 7
JOHN C. NEAL                    )
DEBRA J. MARTENS-NEAL,          )     Bankruptcy No. 04-01429
                                )
     Debtors.                   )
```

## ORDER RE: MOTION TO REDEEM

This matter came before the undersigned on August 4, 2004 on Debtors' Motion to Redeem. Debtors John Neal and Debra Martens-Neal were represented by Attorney Michael Dunbar. Attorney Timothy Sweet appeared for Lincoln Savings Bank. After hearing evidence and arguments of counsel, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

## STATEMENT OF THE CASE

Debtors wish to redeem their 1996 Geo Tracker for $800. The Bank has a security interest in the Tracker. It asserts that Debtors have undervalued the vehicle.

## FINDINGS OF FACT

Debtor John Neal testified that he drives the Tracker to work five to six days a week, 30 miles each way. The vehicle has approximately 130,000 miles on it. It is an automatic with LSi trim. The transfer case must be rebuilt to allow four-wheel drive to function on Debtors' Tracker. Without the four-wheel drive option, this is a rear-wheel drive vehicle. The cost of the repair is at least $1,700. Debtor testified that without four-wheel drive, the Tracker operates "like a hog on ice", making driving in the winter dangerous. He estimates that if the repair wasn't necessary, the Tracker would be worth about $2,000. In its present condition, however, he believes it is worth $500 to $600.

Other than the transfer case problem, the Tracker runs alright. It has a little rust here and there. It gets approximately 20 to 24 m.p.g. Debtor testified that if he is

allowed to redeem the vehicle, he will have the transfer case repaired.

The Bank presented the testimony of Mike DeBerg, its Vice-President in lending. He stated that the balance of the debt which is secured by Debtor's Tracker is $4,200. He inspected the vehicle and testified that it looks good and runs good, although it has a touch of rust by the door. He stated that it gets good mileage at 20 to 24 m.p.g. Mr. DeBerg testified that the Bank usually writes loans for 90% of the purchase price of a vehicle if sold by a dealer, or for 90% of the retail price as listed in the blue book.

The Bank's Exhibits 1 and 2 are the type of N.A.D.A. report the Bank relies on when determining loan value. Exhibit 1 gives a retail value of a two-wheel drive 1996 Tracker of $2,580. Mr. DeBerg testified the Bank would take some depreciation off this amount to get the loan value. Exhibit 2 shows the blue book retail value for a four-wheel drive 1996 Tracker of $3,270. Mr. DeBerg stated this is the value if the vehicle was totally operational. He would subtract the $1,700 repair cost to get the actual value of Debtor's Tracker, or $1,570. During questioning by counsel for Debtor, Mr. DeBerg acknowledged that a blue book report produced by Debtors shows a value of $2,575 for a 1996 four-wheel drive Geo Tracker in good condition. This, however, is trade-in value which is less than retail value.

## CONCLUSIONS OF LAW

Debtors seek to redeem the Tracker pursuant to 11 U.S.C. § 722, which states:

> An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

A redemption claim is valued through application of § 506(a) which defines "allowed secured claim" as "the value of the

2

creditor's interest in the . . . property". <u>In re Penick</u>, 170 B.R. 914, 917 (Bankr. W.D. Mich. 1994). The determination of that value is to be made "in light of the purpose of the valuation and of the proposed disposition or use of" the property. <u>Id.</u>; 11 U.S.C. § 506(a).

In determining the redemption value of collateral, this Court has used as a touchstone the standard of commercially reasonable disposition of the property by the lender. <u>In re Boyce</u>, No. 95-20057KD, slip op. at 2 (Bankr. N.D. Iowa June 16, 1995), citing <u>In re Waters</u>, 122 B.R. 298, 300, 301 (Bankr. W.D. Tex. 1990).

> This standard contemplates a gross sales price less costs to repair the collateral and other costs required to produce a sale. Courts look at such factors as book values, the debtor's opinion, expert opinions and appraisals, the value listed in the debtor's schedules, the condition of the collateral and costs of repairs to determine value. Utilizing this standard permits courts to consider factors affecting the property itself as well as the position of the creditor and its market access. This standard also allows the court to balance the competing interests of the debtor in avoiding the high cost of replacement and of the creditor in protecting its property interest. The amount recovered under a commercially reasonable disposition best represents the creditor's legal claim on the property which is the amount recoverable outside of bankruptcy pursuant to provisions of the U.C.C.

<u>Boyce</u>, slip op. at 2 (citations omitted).

More recently, a majority of the courts have adopted a similar liquidation analysis when making a valuation for redemption purposes under § 722. <u>See, e.g.</u> <u>In re Barse</u>, 309 B.R. 109 (W.D.N.Y. 2004) (wholesale value); <u>In re Weathington</u>, 254 B.R. 895, 899 (B.A.P. 6th Cir. 2000) (liquidation value); <u>In re Bouzek</u>, 311 B.R. 239, 241 (Bankr. E.D. Wis. 2004) (wholesale value, equivalent of trade-in value); <u>In re Podnar</u>, 307 B.R. 667, 670 (Bankr. W.D. Mo. 2003) (liquidation method of valuation); <u>In re Zell</u>, 284 B.R. 569, 572 (Bankr. D. Md. 2002) (wholesale value which is the equivalent of liquidation or foreclosure value); <u>In re Ard</u>, 280 B.R. 910, 914-15 (Bankr. S.D. Ala. 2002) (liquidation/foreclosure value; collecting

3

cases); In re Ballard, 258 B.R. 707, 708 (Bankr. W.D. Tenn. 2001) (liquidation or wholesale value); In re Dunbar, 234 B.R. 895, 898 (Bankr. E.D. Tenn. 1999) (foreclosure value); In re Washington, 2003 WL 22119519, at *4 (Bankr. E.D. Ark. Aug. 25, 2003) (wholesale value); In re Dobler, 2002 WL 31342412, at 4 (Bankr. D.N.D June 20, 2002) (liquidation/wholesale value).

The only case this Court has found which applies replacement or retail value in a § 722 context is In re Smith, 307 B.R. 912, 921 (Bankr. N.D. Ill. 2004). That court concluded that Associates Commercial Corp. v. Rash, 520 U.S. 953, 960 (1997), mandates such a result. In Rash, the Supreme Court concluded that the replacement-value standard applies in Chapter 13 cram down cases. Id. at 964. It is notable that other cases in the Northern District of Illinois have come to different conclusions regarding the applicable standard of valuation in § 722 redemptions. See In re Stark, 311 B.R. 750, 755 (Bankr. N.D. Ill. 2004) (concluding § 722 value is the average between wholesale and retail value; recognizing the split of authority within the district); In re Davis, 300 B.R. 898 (Bankr. N.D. Ill. 2003) (applying liquidation analysis); In re Tripplett, 256 B.R. 594, 598 (Bankr. N.D. Ill. 2000) (using liquidation, or "average trade in" value).

Based on an analysis of the foregoing authority, this Court concludes that the Rash replacement or retail standard does not apply in the context of valuation for purposes of § 722 redemption. Instead, this Court adopts the liquidation analysis, which is synonymous with the concepts of wholesale, foreclosure and trade-in values. The liquidation value is what a secured creditor would expect to recover on repossession and sale by auction or other wholesale means. Weathington, 254 B.R. at 899. It better approximates the creditor's recovery upon executing its contract rights than replacement value. Id. The liquidation analysis should also consider other evidence pertinent to value, such as testimony as to the vehicle's condition, mileage and the need for repairs in deciding whether reduction from the liquidation value is appropriate. Ard, 280 B.R. at 915. This is in line with this Court's analysis in Boyce.

**CONCLUSIONS**

The Bank's Exhibits 1 and 2 are reports of retail value from the N.A.D.A. Official Used Car Guide. Without offering an exhibit, Debtor's counsel cross-examined Mr. DeBerg regarding a

4

report of trade-in value of the Tracker.  Other than the high mileage and the need to repair the transfer case in order to engage four-wheel drive, the record indicates Debtor's Tracker is in good shape.  The Court finds an additional reduction should be taken from the trade-in values of four-wheel drive Trackers based on the need to rebuild the transfer case of Debtors' vehicle.  This reduction need not reduce the trade-in value by the entire estimated amount of the repair.  Instead, the Court makes this determination in its best effort to determine what the Bank would expect to recover on repossession and sale of the Tracker by auction or other wholesale means.  Based on the foregoing, the Court concludes the liquidation value of Debtor's 1996 Geo Tracker is $1,000.

**WHEREFORE**, Debtors' Motion to Redeem is GRANTED in part.

**FURTHER**, Debtors may redeem their 1996 Geo Tracker pursuant to § 722 for the sum of $1,000.

**SO ORDERED** this 23rd day of August, 2004.

*[signature: Paul J. Kilburg]*

PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE